## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**ELIZABETH MARTINEZ,**　　　　　*

Plaintiff,　　　　　　　　　　*

v.　　　　　　　　　　　　　　*　　　Civil No. PJM 19-0169

**BOARD OF EDUCATION OF**　　　*
**PRINCE GEORGE'S COUNTY,**　*

Defendant.　　　　　　　　　*

## MEMORANDUM OPINION

Elizabeth Martinez has sued the Board of Education of Prince George's County ("BOE"), alleging sexual harassment in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. *2000e et seq.*, the Maryland Fair Practices in Employment Act, MD Code Ann., State Gov't, §§ 20-606 and 20-1202 ("FEPA"), and the Prince George's County Code, Division 12, §§ 2-185, 2-186(a)(3), and 2-222. BOE has filed a Motion for Summary Judgment, ECF No. 12, Martinez has responded, ECF No. 13, and BOE has replied, ECF No. 17. On June 30, 2020, the Court held a hearing on BOE's Motion. For the reasons that follow, the Court **DENIES** BOE's Motion for Summary Judgment, ECF No. 12.

### I.

Martinez entered into an employment agreement with BOE on December 6, 2013 to serve as a language arts teacher at Nicholas Orem Middle School in Hyattsville, Maryland. ECF No. 12-8; Martinez Dep. Tr., 18:17-21. Theresa Merrifield was the Principal at the school when Martinez was hired and served as Principal until October 12, 2017, when Lyvita Brooks, one of two Assistant Principals, was promoted to Acting Principal. ECF No. 12-9.

Martinez began a consensual sexual relationship with Assistant Principal Eric Counts in December 2015, which she alleges she tried to end, unsuccessfully, in April 2016, after she discovered that Counts was still married. Martinez Dep. Tr., 68:15-20. When she attempted to end the relationship, Counts allegedly threatened her, telling her she belonged to him, and that, in exchange for sexual favors, he would help her be promoted to Instructional Leader Teacher and eventually help her become an Assistant Principal. *Id.* at 67:9-68:22. Martinez went along with that for a time but submits the relationship ceased being consensual as of April 2016. *Id.* at 67:2-68:17, 92:9-17.

At the start of the 2016-2017 academic school year, on Counts' recommendation, Martinez was promoted to Instructional Lead Teacher even though she allegedly had not applied for the position and was not even aware the position was vacant. ECF No. 14-7; Martinez Dep. Tr., 158:21-159:11. In Martinez's new role, Counts would sit in while she was teaching and would complete Formal Teacher Observations. ECF No. 14-3. Martinez's salary remained unchanged but she received pay for an additional ten days at an hourly rate of $43.71. ECF No. 14-7; Martinez Dep. Tr., 132:11-22. In her new position, Martinez supervised the English as a Second Language department, which had some 12 teachers, helped teachers plan their curriculum, and served as part of the leadership team at the school. *Id.* at 25:10-26:13. During this time, Martinez's relationship with Counts continued, but she says that, during her further attempts to end it, Counts would threaten to stop helping her with her career pursuits, tell her she could not be with anyone else but him, and warn her that she did not know how aggressive he could be. ECF No. 14-4; Martinez Dep. Tr., 86:4-87:17, 90:11-18. He also allegedly physically abused her and referred to her as a "whore." *Id.* at 84:18-22.

In December 2016, Martinez alleges that Counts believed she (Martinez) had told Principal Merrifield that he (Counts) was in a relationship with another employee and forced Martinez to go to Merrifield's office with him. Martinez Dept. Tr., 71:7-72:8, 85:1-87:17, 193:3-195:15; ECF No. 14-4. Martinez states she was "shaking" during their meeting with Merrifield and Merrifield apparently told Martinez "I'm sorry." *Id.* After the meeting, Merrifield spoke with Martinez and asked her if she and Counts were in a relationship, which Martinez denied. *Id.* Counts spoke with Martinez afterwards, allegedly "screaming," and "assaulted" her, such that she had to run away to avoid further harm. *Id.* Martinez alleges that a few days later, on December 22, 2016, Counts raped her. Martinez Dept. Tr., 87:18-90:5. Martinez did not, however, report the alleged rape to any school authorities or the police until 2018.

In March 2017, Martinez asked Counts for a Letter of Reference to support her Application for Admission to a Master's degree program. Counts allegedly told her he would write a letter but only if she would write a letter of recommendation on his behalf to the School Superintendent, Dr. Kevin Maxwell, and others. Martinez Dep. Tr., 199:3-202:22. Martinez did this, producing a letter that exalted Counts as a "consistent advocate for students' safety and well-being" and as someone who "acknowledges and respects the job" she does. ECF 12-12.

On September 25, 2017, Martinez learned that Counts was the subject of an active sexual harassment complaint by yet another person and Martinez was summoned to attend a witness meeting on October 4, 2017 with Amana Simmons, BOE's EEO Advisor. ECF No. 14-13. A few days before the meeting, Martinez alleges that Counts showed her the complaint, ECF No. 14-9, which was from an anonymous individual who alleged that Counts was harassing her and who wrote, "I'm sure Ms. Martinez knows all about this." *Id.*; Martinez Dep. Tr., 57:13-59:14. Martinez says that Counts told her he knew Martinez had been called as a witness in the investigation and

that she "better speak well about [him] because [he] know[s] everybody," that she could "be on the other side of the fence," and that she did not know "how aggressive" he was. *Id.* at 57:13-59:14, 60:17-22. Counts added, even before she left the room, that he would know what had occurred in that room. *Id.* According to Martinez, she asked him how he knew about this complaint and of the fact that she had been called as a witness, and he responded that he knew "people." *Id.* at 58:5-14. Martinez then avers that in the meeting with Simmons, because of Counts' threats, she told Simmons that she did not have knowledge of allegations by any staff member or teacher against Counts. *Id.* at 56:18-57:12. After the meeting, Counts supposedly called Martinez and told her she did a good job. ECF No. 14-4.

That same month, Martinez says that she was walking out of the school with Brooks, who by then had become Acting Principal, ECF No. 12-9, when she told Brooks that Counts was "mean" to her and "doing bad things" to her and that he would "end [up] in jail." Martinez Dep. Tr., 161:19-162:22. Brooks allegedly raised her hands and said she did not want to hear anything about that and did not follow up on Martinez's comments. ECF No. 14-4.

On November 21, 2017, Counts allegedly asked Martinez to file a complaint against former principal Merrifield on his behalf on some unknown matter. *Id.* Martinez stated she refused, whereupon Counts threatened to stop helping her in her career and at work. *Id.* A few days later, even after Counts offered to pay her, Martinez allegedly refused to sign a complaint, prepared by Counts, against Merrifield alleging sexual harassment, which identified Martinez as a witness. *Id.*; Martinez Dep. Tr., 74:6-75:19.

On November 30, 2017, Counts allegedly told Martinez that Brooks had written a negative email about her. ECF No. 14-4. After this conversation, Martinez says she was called to Brooks' office to discuss work-related issues, during which Brooks told her she seemed pale and did not

look well. *Id.* Martinez allegedly told Brooks that she had met earlier that day with Counts and he accused her of recording him. *Id.* Martinez also allegedly told Brooks, "you know he's been sexually harassing me." *Id.* Brooks supposedly simply told Martinez to go home. *Id.*

After that, Martinez states that Brooks would text her to inform her of times when Counts would not be in the building. Martinez says this was the only action taken in October and November 2017 in response to her official report regarding Counts' conduct.

On December 20, 2017, Martinez filed an administrative complaint with the Prince George's County Human Relations Commission and the EEOC, alleging sex discrimination/sexual harassment based on her interactions with Counts. ECF No. 12-3. The school was closed from December 25, 2017 through January 1, 2018 but, on January 2, 2018 Brooks gave Martinez a "Discrimination/Harassment" form to complete based on her report of sexual harassment. ECF No. 14-4; ECF No. 14-14; ECF No. 12-16.

On January 2, 2018, Martinez filed a Discrimination or Harassment Incident Report with BOE pursuant to Administrative Procedure 4170 ("AP 4170"). ECF No. 12-17. On January 3, 2018, Martinez also filed a report with the Prince George's County Police Department, ECF No. 12-16, and on January 10, 2018, she filed a Petition for Protection against Counts, likely in the District Court for Prince George's County, ECF No. 14-4. On January 18, 2018, Martinez met with Simmons to discuss her January 2, 2018 Report. ECF No. 12-18.

On January 11, 2018, BOE notified Counts that he was the subject of a complaint and placed him on administrative leave with pay. ECF No. 14-11. Counts refused to cooperate with the process in any way and on February 23, 2018 he was placed on leave without pay. ECF No. 12-20; ECF No. 12-16. On February 26, 2018, Counts resigned. *Id.*

On December 26, 2018, Martinez notified both the Human Relations Commission of Prince George's County and the EEOC of her desire to close the administrative complaint so she could file a civil action. ECF Nos. 12-4 and 12-5. On January 17, 2019, Martinez filed her Complaint in this Court. ECF No. 1. At the time of filing, the EEOC was closed due to the Government shutdown and could not issue a Notice of Right to sue, but on March 8, 2019, it did so. ECF No 12-6. Under the circumstances, the Court finds the out-of-sequence filing of the Notice of Right to sue unimportant.

Martinez seeks compensatory damages in excess of $150,000[1], attorney's fees and costs, and pre-judgment and post-judgment interest. On September 26, 2019, BOE filed a Motion for Summary Judgment. ECF No. 12. Martinez responded on October 11, 2019, ECF No. 13, and BOE Replied on October 24, 2019, ECF No. 17. The Court heard oral argument on BOE's Motion for Summary Judgment on June 30, 2020. ECF No. 19.

## II.

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This does not mean, however, that "some alleged factual dispute between the parties" necessarily defeats the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Rather, "the requirement is that there be no genuine issue of material fact." *Id.* (emphasis in original). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

---

[1] During the June 30, 2020 hearing, Martinez withdrew her demand for punitive damages.

Summary judgment is properly granted against a party who fails to establish the existence of an element essential to the party's case and as to which that party bears the burden of proof at trial. *Cleotex v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party meets that burden, the non-movant must come forward with specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In reviewing a motion for summary judgment, the court views the facts and all reasonable inferences that may be drawn from them in the light most favorable to the non-moving party. *Id.* at 587-88; *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017). The court must also "refrain from 'weigh[ing] the evidence or mak[ing] credibility determinations'" when evaluating motions for summary judgment. *Lee*, 863 F.3d at 327 (quoting *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015)).

Title VII states that it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). The purpose of Title VII "is not to provide redress but to avoid harm." *Faragher v. City of Boca Raton*, 524 U.S. 775, 806 (1998). Courts have long recognized that sexual harassment can be a violation of Title VII. *See, e.g.*, *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986).

The FEPA is the "state law analogue of Title VII" and because "Maryland courts interpreting [the FEPA] have often found federal cases arising under Title VII to be persuasive authority" and Martinez has not "asserted a distinction between her federal and Maryland discrimination claims," the Court applies the same standards of analysis under Title VII and the

FEPA. *McCleary-Evans v. Maryland Dep't of Transp.*, 2015 WL 1285325, at *22 (D. Md. Mar. 20, 2015), *aff'd*, 631 F. App'x 178 (4th Cir. 2016); *see also Jones v. GT Contracting Corp.*, 2016 WL 704319, at *5 (D. Md. Feb. 23, 2016). Further, the sections of the Prince George's County Code at issue here "largely track[]" the language of Title VII as well. *See, e.g.*, *Bryan v. Prince George's Cty., Md.*, 2011 WL 2650759, at *8 (D. Md. July 5, 2011), *aff'd*, 484 F. App'x 775 (4th Cir. 2012). Since the Parties do not differentiate between Title VII, FEPA, and the relevant sections of the Prince George's County Code, the Court applies the same standards of analysis under all three.

There are two types of sexual harassment that are generally recognized: quid pro quo sexual harassment, where sexual consideration is demanded in exchange for job benefits, and harassment that creates an offensive or hostile work environment. *Rachel-Smith v. FTData, Inc.*, 247 F. Supp. 2d 734, 745 (D. Md. 2003) (citing *Katz v. Dole*, 709 F.2d 251, 254 (4th Cir.1983)). Martinez claims she was subjected to both the quid pro quo and hostile work environment varieties.

To establish a claim of quid pro quo sexual harassment, a plaintiff must show that (1) she belongs to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment complained of was based upon sex; (4) plaintiff's reaction to the harassment affected tangible aspects of compensation, terms, conditions, or privileges of employment; and (5) the employer knew or should have known of the harassment and took no effective remedial action. *Brown v. Perry*, 184 F.3d 388, 393 (4th Cir. 1999).

In order to make out a hostile work environment claim based on sex, a "plaintiff must prove that the offending conduct (1) was unwelcome, (2) was based on her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working

environment, and (4) was imputable to her employer." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003).

However, "classification of alleged discrimination as either 'quid pro quo' or 'hostile work environment' harassment plays no role in the decision as to whether an employer will be held vicariously liable for the acts of a supervisor." *Perry*, 184 F.3d at 394 (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 751 (1998)).

With this framework in mind, the Court applies the law to the facts of the case.

### III.

This much is clear: As to both her quid pro quo and hostile work environment claims, Martinez, a woman and therefore a member of a protected group, was subject to unwelcome sexual harassment based on her sex, which, at least at one point, became unwelcome and if true, was severe and pervasive. The parties do not dispute these elements of her claims.

The issues at this juncture revolve around the extent to which there is credible evidence of any of the following situations, any one of which could lead to liability for BOE: (1) that Counts was Martinez's supervisor and took "tangible employment action" against her; (2) that Counts was Martinez's supervisor and did not take "tangible employment action" against her, but BOE failed to exercise reasonable care to prevent and correct any harassing behavior, and Martinez reasonably did not take advantage of the preventive or corrective opportunities that BOE provided; and (3) that Counts was Martinez's co-worker, but that BOE knew or should have known about the harassment and failed to take effective action to stop it.

This is a suit against Counts' employer, BOE. The Court, therefore, begins with the alleged harasser's relationship to the employee, because "if the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions." *Vance*

*v. Ball State Univ.*, 570 U.S. 421, 424 (2013). But if the harasser is the victim's supervisor, "the employer is strictly liable for the supervisor's harassing behavior if it 'culminates in a tangible employment action,' but otherwise 'may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 278 (4th Cir. 2015) (citing *Vance,* 570 U.S. at 424); *see also Ellerth*, 524 U.S. at 765.

In this case, the definition of "supervisor" is critical. In *Vance*, the Supreme Court defined "supervisor" as one who is "empowered…to take tangible employment actions against the victim, i.e., to effect a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." 570 U.S. at 431. The Supreme Court explicitly rejected the "open-ended approach advocated by the EEOC's Enforcement Guidance, which ties supervisor status to the ability to exercise significant direction over another's daily work." *Id.*

BOE moves for Summary Judgment on several grounds: 1) that there is no genuine dispute that Counts was Martinez's co-worker and not her supervisor because he was not empowered under Maryland law to take employment actions against her, such that BOE cannot be held vicariously liable for his actions; 2) that there is no genuine dispute as to whether BOE exercised reasonable care to prevent and correct any harassing behavior about which it knew or should have known; and 3) that there is no genuine dispute that Martinez failed to take advantage of preventive or corrective opportunities under AP 4170 and, as such, she cannot show that "the employer knew or should have known of the harassment and took no effective remedial action that the offending conduct" or that the offending conduct "was imputable to her employer." These grounds relate to

the fifth prong of a claim for quid pro quo sexual harassment and the fourth prong of a claim for hostile work environment.

Martinez argues that there is, indeed, a genuine dispute as to all these facts, all of which are material. First, as to the status of Counts as her supervisor, she submits that Maryland authorizes the Chief Executive Office of BOE (the "CEO") to delegate supervisory authority, and that the CEO has delegated such authority to administrators at the school level, including Principals and Assistant Principals. Counts, she says, was at a minimum her de facto supervisor. Further, according to Martinez, there is a material dispute as to whether her promotion, to Instructional Lead Teacher, apparently engineered by Counts, was a "tangible employment action" and whether Martinez's relationship from April 2016 through November 2017 was a quid pro quo relationship. Martinez states that even if the Court holds that a reasonable trier of fact cannot find that Counts was a supervisor, there is a genuine dispute as to whether BOE is still subject to liability for not taking action after it was or should have been on notice of allegations against Counts.

The Court addresses each of these arguments.

A. *There is a genuine dispute as to whether Counts was Martinez's supervisor for purposes of Title VII.*

BOE argues that Counts was not a supervisor because he lacked authority under Maryland law to take "tangible employment actions" against Martinez, i.e. to effect a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Vance*, 570 U.S. at 431. Instead, BOE argues, citing Md. Code Ann., Educ. § 6-201(b), the authority to hire, fire, and/or reassign certified employees of the Board, including Martinez, rests solely with the CEO. Therefore, according to BOE, since Counts was not the CEO, BOE is not strictly liable for his actions.

The Court disagrees. BOE is in effect arguing that only the "CEO has the exclusive authority to take tangible employment action" against employees such as Martinez, but the logical implication of this argument would be that the only supervisor in the entire Prince George's County Public Schools system is the CEO, so that unless the CEO himself was the harasser, the conduct of a harassing employee within the school system could never result in strict liability for BOE. The law clearly does not support this view. While Md. Code Ann., Educ. § 6-201(b) states that "the county superintendent [CEO] shall nominate for appointment by the county board...[a]ll principals, teachers, and other certified personnel," it must be read in tandem with Md. Code Ann., Educ. § 4-402, which states that the CEO may "delegate the responsibilities established under subsection (b)" including responsibilities related to "the day-to-day management and oversight of the fiscal affairs" to "appropriately qualified individuals as determined and deemed necessary by the Chief Executive Officer." In fact, delegation of responsibilities was contemplated by the Supreme Court in *Vance* when it stated that "even if an employer concentrates all decisionmaking authority in a few individuals, it likely will not isolate itself from heightened liability" since "those individuals will have a limited ability to exercise independent discretion when making decisions and will likely rely on other workers who actually interact with the affected employee." 570 U.S. at 446-47.

The question before the Court is whether there is a genuine dispute of material fact for a reasonable trier of fact to consider on the issue of whether the CEO explicitly or implicitly delegated to the Martinez's Middle School Principal and, through her to Assistant Principal Counts, the authority to take "tangible employment actions" against Martinez. Martinez argues that the CEO did in fact delegate the direct, day-to-day managerial duties to administrators at the school level, including the Assistant Principals, citing as evidence certain facts that supposedly

demonstrate this authority. For example, after Martinez's promotion to Instructional Lead Teacher, Counts prepared the documentation upon which her evaluations were based and informed her what her overall performance rating was even before she met with the Principal. Martinez also stated that though the Principal formally signed the evaluations, the Principal never observed Martinez in the classroom; it was always Counts who did. Moreover, in 2015, an Assistant Principal (Brooks) signed Martinez's performance evaluation.

Martinez also points to the fact that she received the promotion to Instructional Lead Teacher after Counts told her that he would help her achieve the promotion, despite the fact that she never applied for the position or even knew it was open. That is, Counts apparently brought the promotion about.

Based on these facts, the Court finds that a trier of fact could reasonably conclude Counts was at least Martinez's de facto supervisor. The Fourth Circuit has said that "to be considered a supervisor, the employee need not have the final say as to the tangible employment action; instead, the employee's decision may be 'subject to approval by higher management.'" *Boyer-Liberto*, 786 F.3d at 278 (citations omitted). The fact that an individual's "discharge decision or recommendation. . . would be rubber-stamped" supports a finding that the individual is a supervisor. *Id.* at 280. *See also Lindquist v. Tanner*, 2013 WL 4441946, at *3 (D.S.C. Aug. 15, 2013) (finding that supervisor status "can also come about where an alleged harasser amounts to a de facto supervisor based on the tangible actions that individual has in fact been empowered by the employer to take against the victim.") (citations omitted). Indeed, the Supreme Court has advised that "the employer may be held to have effectively delegated the power to take tangible employment actions to the employees on whose recommendations it relies." *Vance*, 570 U.S. at 447.

Here it is alleged that Counts in fact had authority to take and did take "tangible employment actions"[2] affecting Martinez by causing her to be promoted to Instructional Lead Teacher, a position she says she never applied for. A reasonable trier of fact could find that the promotion was at the very least a "reassignment with significantly different responsibilities" because after her promotion, Martinez was part of the "leadership team" and supervised other teachers, whereas before she was one of the teachers. The fact that the "tangible employment action" was not, technically speaking, adverse is irrelevant in this context. Not only is the "use of the term 'adverse'. . . contrary to the plain language of both *Faragher* and *Ellerth*," both of which included the term "hiring" in the definition of tangible employment action, *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 93 (2d Cir. 2002), the power to take positive tangible employment actions against an individual goes hand-in-hand with the power to take adverse employment actions as well.

Because there is evidence suggesting that Counts had authority to take "tangible employment actions" against Martinez, the Court finds there is a genuine dispute as to whether Counts was Martinez's supervisor and whether Martinez's unsolicited promotion to Instructional Lead Teacher was a "tangible employment action" taken by Counts and apparently rubber-stamped by higher-ups.

B. *There is a genuine dispute as to whether BOE exercised reasonable care.*

Even if a reasonable trier of fact determines that Counts was Martinez's supervisor because he had authority to take "tangible employment actions" against her and that no "tangible employment action" was actually taken as to Martinez, BOE may nevertheless avoid liability if it

---

[2] Whether Counts had authority to take "tangible employment actions" vis-à-vis Martinez is important in analyzing whether Counts was Martinez's supervisor. But Martinez's promotion to Instruction Lead Teacher could also demonstrate quid-pro-quo sexual harassment because Martinez was promoted only after she agreed to Counts' sexual advances. BOE, however, focuses its argument on the first point.

proves that it (1) exercised reasonable care to prevent and correct any harassing behavior and (2) that Martinez unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided.

To begin, the Court emphasizes that this defense, known as the Faragher/Ellerth defense, is not available when the supervisor's harassment culminates in a "tangible employment action." *See Faragher*, 524 U.S. at 808. This includes "tangible employment action" where "a supervisor undertakes or recommends a tangible job action based on a subordinate's response to unwelcome sexual demands" because the "result is the same whether the employee rejects the demands and is subjected to an adverse tangible employment action or submits to the demands and consequently obtains a tangible job benefit." *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012) (citing the EEOC's Enforcement Guidance[3] in dicta).

Since the Court has just determined that a genuine dispute of fact exists as to whether Martinez's promotion to Instructional Lead Teacher was a "tangible employment action" that Counts was responsible for, if the trier of fact finds that Counts was Martinez's supervisor and Counts took "tangible employment action" against Martinez, the Faragher/Ellerth defense is not available to BOE.

But assuming the defense is available, BOE argues that it exercised reasonable care because it maintained a written anti-harassment policy fairly calculated to prevent and address workplace sexual harassment, i.e. AP 4170, which provides an effective avenue for the resolution of harassment complaints. And as to this, says BOE, Martinez did not take advantage because she did not even report that she was subjected to sexual harassment by Counts until November 30,

---

[3] Though the Supreme Court in *Vance* rejected the EEOC's Enforcement Guidance on the definition of a supervisor, the Court still finds its guidance on this point and the Fourth Circuit's decision in *Dulaney* on this point applicable and persuasive.

2017, despite the fact that she had a clear opportunity to report the harassment to Simmons, BOE's EEO Advisor, in October 2017. BOE then says that, when notified about these allegations, Counts' harassment of Martinez stopped. In view of that, BOE submits it fostered a hospitable reporting environment and could not be expected to remedy a problem it did not and could not have known about.

Martinez counters that BOE was on notice of her alleged sexual harassment by at least September 2017, if not earlier, when it received an anonymous complaint alleging that Counts was sexually harassing other women, but it was not until January 2018 that BOE took any action against him. She says that before September 2017, she was afraid of reporting Counts due to the many threats he made. She adds that, as a matter of practice, AP 4170, was outdated and not followed as it should have been, and that a trier of fact could give appropriate weight to those facts. *See Ocheltree*, 335 F. 3d at 335.

The Fourth Circuit has said that mere "[d]istribution of an anti-harassment policy provides compelling proof that the company exercised reasonable care in preventing and promptly correcting sexual harassment" unless the "employer adopted or administered an anti-harassment policy in bad faith or that the policy was otherwise defective or dysfunctional." *Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 266 (4th Cir. 2001) (citations omitted). But "mere promulgation of such a policy may well fail to satisfy the employer's burden" because "any policy adopted by the employer must be both reasonably designed and reasonably effectual." *Brown*, 184 F.3d at 396. The "availability of higher management to receive complaints" also suggests reasonable care. *Id.*

The Court notes that AP 4170 provides that "[a]ny [Board] employee . . . who believes that he or she has been subjected to discrimination or harassment should report the incident promptly

to the Regional Executive Director, Principal, Vice Principal, Supervisor, or designee for appropriate action."[4] AP 4170 adds that the "recipient of such a complaint is required to obtain a statement from the alleged offender, and if both parties agree to mediate the matter, the recipient will conduct a mediation of the dispute." AP 4170 was posted on the Board's intranet, was made available in hard copy at all school system work sites, and was reviewed as part of the Board's annual, mandatory training on sexual harassment. Simmons Dep. Tr, 25:3-27:5. Martinez concedes she was aware of this policy.

While Martinez argues that AP 4170 has not been updated since 2000 and includes outdated terms, a somewhat tenuous proposition, her more persuasive argument is that the procedure may have been "defective or dysfunctional" due to a lack of faith in BOE to vigorously and confidentially follow-up on sexual harassment complaints. This ties into the second part of the Faragher/Ellerth defense: the question of whether Martinez unreasonably failed to take advantage of preventive or cooperative processes.

The Supreme Court has said that "demonstration of [an employee's failure to fulfill the corresponding obligation of reasonable care to avoid harm] will normally suffice to satisfy the employer's burden under the second element of the defense." *Faragher*, 524 U.S. at 807-08. But in this case, the problem is that the process may have been defective in the sense that Martinez was too fearful of Counts to officially report her harassment. To be sure, it can be said that she stayed with him in order to further her own career. But that does not necessarily cancel out the fear factor. Every time Martinez tried to say "no more," Counts threatened her, even raping her, she says, promising her professional success only if she continued to have sex with him. When Martinez met with Simmons in October 2017 to discuss the anonymous sexual harassment complaint against

---

[4] The fact that AP 4170 allows Board employees to report alleged sexual harassment to a Vice Principal is another example that buttresses the argument that BOE delegated supervisory authority to Counts.

Counts, he allegedly threatened her and told her to lie because "he knew people" and she "could have been on the other side of the fence, if he knew that [she had said] something bad about him." Martinez Dep. Tr., 57:8-12. In fact, Counts apparently even showed her the actual complaint of the other individual, in which the complainant stated she was "afraid for [her] job and the denial of advancement opportunities." ECF No. 14-9. The other individual's complaint also mentioned the fact that the school system "is too vindictive to be trusted" and rhetorically asked "[w]ho do you complain to when the man sexually harassing you tells you that his aunt is the Associate Superintendent?" *Id.* Martinez alleges that the complaint was given to Counts by "Mr. B," who may be Brian Baudoin, the Associate Superintendent. Martinez Dep. Tr., 58:17-21; Simmons Dep. Tr., 137:12-22; ECF No. 14-4.

If Martinez is to be believed, this raises serious questions: How is it that this other complaint and its allegations of impropriety within the reporting system were leaked to Counts, as were the details of Martinez's interview with Simmons? How is it that Counts, who immediately contacted Martinez after her meeting with Simmons, knew to tell Martinez she performed well in the interview?

Although "courts have refused to recognize a nebulous 'fear of retaliation' as a basis for remaining silent," *Barrett*, 240 F. 3d at 262, in some cases, the fear of retaliation may not be nebulous at all; it may be very tangible, real and reasonable. For example, in *Barrett*, while the Fourth Circuit found that the plaintiff's explanation that she did not report the harassment because she thought senior management was itself guilty of sexual harassment and thus would ignore her complaints as they ignored others was an insufficient reason to not report, it cited as a factor the fact that the supposed events of harassment had occurred years before plaintiff had joined the employer. *Id.* at 268. In the present case, Counts was apparently not just related to someone senior

in BOE; he made it clear to Martinez and others that he was actively playing upon this connection, and Martinez personally observed how details of the other sexual harassment investigation had been leaked to Counts, the very subject of the other complaint. Further, Martinez saw that BOE never bothered to interview Counts in connection with this anonymous complaint.

Considering these facts, the Court concludes that there is a genuine dispute as to material elements of the Faragher/Ellerth defense. Given the emotional, professional and physical threats against her and the knowledge that Counts was not only well-connected but ready to rely upon those connections, a trier of fact could reasonably conclude that Martinez did not unreasonably fail to take advantage of the preventive or corrective opportunities that BOE provided by using the process articulated in AP 4170.

C. *Even if a trier of fact were to find that Counts was not a supervisor, there is a genuine dispute as to whether BOE exercised reasonable care.*

The Fourth Circuit has said that "[i]n a case where an employee is sexually harassed by a coworker, the employer may be liable in negligence if it knew or should have known about the harassment and failed to take effective action to stop it." *Ocheltree*, 335 F. 3d at 333-34. Specifically, "knowledge of harassment can be imputed to an employer if a reasonable [person], intent on complying with Title VII, would have known about the harassment." *Id.* at 334 (citations omitted). As with the Faragher/Ellerth defense, whether there is a written anti-harassment policy matters because the "institution and enforcement of an anti-harassment policy, in conjunction with an adequate complaint procedure, aid the employer in establishing that it has exercised reasonable care to prevent discrimination." *EEOC v. Xerxes Corp.*, 639 F.3d 658, 669 (4th Cir. 2011) (citations omitted).

Notice is also important "because it provides an opportunity for the employer to correct and prevent sexual harassment, and to do so sooner rather than later." *Wilson v. Gaston Cty.*, NC,

685 F. App'x 193,196 (4th Cir. 2017). As such, "an employee claiming harassment by a coworker bears significant responsibility in notifying the employer." *Howard v. Winter*, 446 F.3d 559, 570 (4th Cir. 2006). Even so, the onus on the employee to come forth does not give the employer license to adopt a "see no evil, hear no evil" strategy." *Ocheltree*, 335 F. 3d 325. "By establishing an environment hospitable to reporting, employees are encouraged to come forward, sexual harassment can be prevented sooner rather than later, and employers will not be burdened with liability for conduct of which they were unaware." *Wilson*, 685 F. App'x at 197. However, the reverse is also true. An inhospitable environment discourages an employee from coming forward.

BOE argues that AP 4170 provided reasonable procedures for victims to register complaints of sexual harassment, trained employees including Martinez on the anti-harassment standard, and maintained a hospitable reporting environment. As such, BOE says it took reasonable care and immediate action to stop Counts' purported harassment as soon as it had notice.

But for the reasons just discussed, a reasonable trier of fact could find that the reporting environment was not, in fact, hospitable. Further, a reasonable trier of fact could find that BOE was on notice of Martinez's alleged harassment as early as December 2016, when Principal Merrifield suspected Counts was violating the Conflict of Interest Administrative Procedure by having relations with Martinez and they all met in her office. Or the trier of fact could also find that BOE was on notice by September 2017 when it received the anonymous complaint from another apparent victim of harassment by Counts and Martinez was named as a witness. Or BOE could be found to have had notice in early October 2017, when Martinez told Brooks that Counts was a "bad man" who was "going to jail," and Brooks put up her hands and told Martinez she did not want to hear anymore. In any event, BOE appears to have taken no formal action against

Counts until January 2018 (though Martinez concedes the harassment stopped on November 30, 2020, when she informed Brooks directly that Counts had been harassing her.)

The Court finds that a reasonable trier of fact could find that BOE did not exercise reasonable care in connection with Martinez's claims of sexual harassment.

## IV.

For the foregoing reasons, the Court **DENIES** the Motion for Summary Judgment, ECF No. 12. A separate Order will **ISSUE**.

/s/

_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

August _2l_, 2020